IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| **MEDITAB SOFTWARE, INC.**, a California corporation, and **KALPESH PATEL**,<br><br>Plaintiffs,<br><br>v.<br><br>**PHARMACY SOFTWARE HOLDINGS, LLC**, a Utah limited liability company, and **SUITERX, LLC** a Delaware limited liability company,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-33<br><br>Judge Clark Waddoups |

Before the court is a second motion for partial summary judgment (ECF Nos. 64, 65) (the "Second Motion") filed by Plaintiffs Meditab Software, Inc. and Kalpesh Patel ("Meditab"). Defendants Pharmacy Software Holdings, LLC and SuiteRx, LLC (collectively "Pharmacy") oppose Meditab's motion. The Second Motion has been fully briefed, and the court heard argument on the same on January 27, 2021. The court denied Meditab's first motion for partial summary judgment (ECF Nos. 39, 40) (the "First Motion") by order entered July 14, 2020 (ECF No. 62) (the "First Order") because genuine issues of material fact exist. After due consideration of the parties' filings and oral arguments, and otherwise being fully advised, **IT IS HEREBY ORDERED** that Meditab's Second Motion is **DENIED**. Meditab's Second Motion also requests, as an alternative form of relief, that the court order Pharmacy to pay all amounts due under the Membership Interest Purchase Agreement (the "MIPA") into escrow with the court. For the reasons discussed herein, Meditab's alternative request is also **DENIED**.

## BACKGROUND

For purposes of this order the court adopts the recitation of facts set forth in the "Background" Section of the First Order. (*See* First Order, ECF No. 62 at 1–6). It further recognizes the following facts (some of which were included in the First Order) that are relevant to the Second Motion:

1. The modified payment schedule set forth in the First Amendment to Membership Interest Purchase Agreement (the "Amendment" and together with the MIPA the "Agreement") (ECF No. 40-2), provided for the following payments:

    a. a $200,000 payment by June 25, 2019, with the remaining $1,800,000 due to bear a 6% annual interest rate compounded and payable monthly with a $9,000 interest payment due by July 1, 2019 (ECF No. 40-2 at 2);

    b. a $300,000 payment due by July 19, 2019, with the remaining $1,500,000 due to bear a 6% annual interest rate compounded and payable monthly with $7,500 interest payments due by August 1, 2019, September 1, 2019, October 1, 2019, and November 1, 2019 (ECF No. 40-2 at 2–3);

    c. a $500,000 payment due by November 1, 2019 (the "November 1 Payment"), with the remaining $1,000,000 due to bear a 12% annual interest rate compounded and payable monthly with $10,000 interest payments due by December 1, 2019, January 1, 2020, February 1, 2020, March 1, 2020, and April 1, 2020 (ECF No. 40-2 at 3); and

    d. the final payment of $1,000,000 due by April 1, 2020 (ECF No. 40-2 at 3).[1]

---

[1] As the court noted in the First Order, the Amendment is silent as to the Note originally required by the MIPA. (*See* ECF No. 40-2 at 2–3). This ambiguity as to the status of the Note was one of the genuine issues of material fact that the court found precluded it from granting the relief Meditab sought in the First Motion.

2. On November 7, 2019, Pharmacy wired $500,000 to MedPharm Services, LLC, a company controlled by Meditab, but on November 11, 2019, Meditab reversed the wire because "the funds do not belong to MedPharm Services, LLC" and because it "had already provided notice of default" to Pharmacy (*see* Complaint, ECF No. 2 at ¶ 56);

3. Pharmacy subsequently made the scheduled interest payments of $10,000 on December 1, 2019 and January 1, 2020 (the "Interest Payments");

4. Meditab retained the Interest Payments until after the court's January 31, 2020 hearing on Meditab's Motion for Temporary Restraining Order (*see* ECF No. 65-1 at 5–6);

5. In early February 2020, Medtiab returned the Interest Payments to Pharmacy;

6. In early February 2020, Medtiab asked Pharmacy to deposit funds into escrow with the court, but Pharmacy declined to do so (*see* ECF No. 65-4); and

7. To date, Pharmacy has not made the payment of $1,000,000 that the Amendment stated was due by April 1, 2020 (the "April Payment").

Based on these facts, Meditab asks the court to grant it summary judgment on its claim of breach of contract. Specifically, Meditab asks the court to find that that Pharmacy's failure to make the April Payment constituted a breach of the Agreement and that as such, and pursuant to Section 8.4 of the Agreement, ownership of the Purchased Assets was revoked from Pharmacy and has reverted back to Meditab and the Agreement's restrictive covenants (the "Restrictive Covenants") are now void and of no effect. Meditab also requests an alternative relief in the form of the court ordering Pharmacy to pay "under all sums due under the MIPA (no less than $1,550,000) into escrow with the Court, pending resolution of this litigation." (*See* ECF No. 65-1 at 28).

## **DISCUSSION**

Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). A material fact is one that may affect the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Id*. The court must "view the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001).

Meditab's Second Motion is predicated on its assertion that Pharmacy materially breached the Agreement by failing to make the April Payment as set forth in the Amendment. Meditab argues that as a result of this breach, and pursuant to the terms of the Agreement, the Purchased Assets reverted back to Meditab and the Covenants and Restrictions became void. While Pharmacy does not dispute that it has not made the April Payment, it argues that all of the genuine issues of material fact that the court found precluded it from granting Meditab's First Motion still exist, are relevant to this Second Motion, and also preclude this Second Motion from being granted. The court agrees.[2]

---

[2] As an initial matter, the court recognizes that Meditab's allegations regarding Pharmacy's failure to make the April Payment are not included in the Complaint (as the Complaint was filed months before that Payment was arguably due), and that Meditab has not amended its Complaint to assert those allegations. The parties dispute whether such an amendment is required and whether these allegations are therefore properly before the court. Because the court finds, as discussed herein, that genuine issues of material fact remain in this matter and preclude the relief that Meditab seeks, it need not resolve this dispute. Rather, for purposes of this order, the court assumes, *arguendo*, that Meditab's allegations regarding Pharmacy's failure to make the April Payment as set forth in the Amendment are properly before it.

### I. Material questions of fact exist as to whether Pharmacy was required to make the April Payment as set forth in the Amendment.

As the court noted in the First Order, because neither the MIPA nor the Amendment contains a time is of the essence clause, under Delaware law, the court "must look to the surrounding circumstances to determine whether the parties intended strict compliance with a particular timeframe," including "the parties' history of interactions.'" (*See* First Order, ECF No. 62 at 7–9 (quotations and citations omitted)). In denying Meditab's First Motion, the court concluded that it could not determine that Pharmacy's six-day delay in making a payment was unreasonable and therefore a material breach of the Agreement. In this Second Motion, Meditab argues that because Pharmacy has completely failed, for over ten months, to make the April Payment, there can be no dispute as to the materiality of the breach here.

Meditab's argument presupposes that it is undisputed that Pharmacy was indeed required to make the April Payment as set forth in the Amendment. But the "the surrounding circumstances" and the parties' "history of interactions" call that conclusion into question. While it is undisputable that under the Amendment, Pharmacy had agreed to make a "final payment of $1,000,000 due by April 1, 2020" (*see* ECF No. 40-2 at 3), it remains in dispute whether a series of actions taken by the parties altered Pharmacy's obligation.

Pharmacy wired the November 1 Payment to MedPharm Services, LLC on November 7, 2019, but on November 11, 2019, Meditab rejected the payment and reversed the wire. Meditab asserts that it had two reasons for doing so: because the wire had been sent to the wrong recipient[3] and, relevant here, because Pharmacy was already in default of the Agreement. (*See* Complaint, ECF No. 2 at ¶ 56). Meditab repeatedly emphasized to Pharmacy that it was

---

[3] It appears, or is at least subject to proof, that Meditab controlled MedPharm Services, LLC and could have transferred the funds to Meditab's account. Meditab controlled and directed the return of the funds to Pharmacy.

rejecting payment because Pharmacy had already breached the Agreement. On November 8, 2019, it "reiterat[ed] what was in the Second Notice that Pharmacy had already breached the Agreements and was in default and that Plaintiffs were exercising their rights and remedies under the Agreements" and on November 11, 2019 it reversed the wire and again reiterated, seemingly as an explanation to Pharmacy as to why the wire was being reversed, "that Plaintiffs had already provided notice of default." (*See* Complaint, ECF No. 9 at ¶¶ 55–56). Thus, the record before the court clearly establishes that Meditab rejected the November 1 Payment of $500,000 payment, at least in part, because it considered Pharmacy to be in breach of the Agreement. The record also makes clear that Meditab repeatedly informed Pharmacy of this position.

It is also undisputed that Meditab belatedly rejected the next two payments Pharmacy made under Agreement, the two Interest Payments. Meditab alleges that it accepted those payments "unknowingly" (ECF No. 65-1 at p. 21), and when it returned the payment, it emphasized, through bold and italic type, that it was not accepting those payments. (*See* ECF No. 70 at p. 7, ¶ 22).

These facts raise serious questions as to whether, by April 1, 2020, Pharmacy believed that it was still required to make the April Payment as set forth in the Amendment. Indeed the "surrounding circumstances" around that payment and "history of interactions" between the parties indicate that Meditab had considered Pharmacy in breach of the Agreement and was therefore unwilling to accept any tender Pharmacy made under the Agreement.

While the parties discuss these actions, they do it in the context of arguing whether Pharmacy's April Payment would have been futile. Although Meditab is correct that Pharmacy has not definitively established that making the April Payment would have been futile, proof of this individual tree is unnecessary when it is part of a forest of ambiguities concerning how the

parties' interactions shaped their obligations under the Agreement. These ambiguities preclude the court from determining, based on the record before it, that as a matter of law Pharmacy's failure to make the April Payment was a material breach of the Agreement.

On a final note, Meditab argues that its desire to continue to be paid pursuant to the terms of the Agreement was made clear because on February 11, 2020, it asked Pharmacy to pay the funds it owed under the Agreement into escrow with the Court (which Pharmacy declined to do). But this request simply shows that Meditab believed that Pharmacy owed it money; it says nothing about whether Pharmacy was obligated to continue to make payments in the manner set forth under the Amendment. To the contrary, the communication indicates that Meditab was moving away from the Agreement and was seeking payment in manner outside of the terms to which the parties had agreed. Once again, "Meditab's arguments raise more questions than they answer." (*See* First Order, ECF No. 62 at 10).

## II. A material question of fact remains as to whether Meditab first breached the Agreement.

The First Order recognized that there remained "unanswered" and "material questions of fact" as to how Pharmacy's claims that Meditab was the first to breach the Agreement affects Meditab's assertion that it is entitled to relief as a result of Pharmacy's failure to make scheduled payments. Those questions still exist.

In its Second Motion, Meditab essentially argues that this question is no longer relevant because regardless of who breached the contract first, Pharmacy was required to continue making payments under the Agreement. But, as discussed above, that conclusion is not as clear as Meditab represents. Further, Meditab overlooks the relief its Second Motion seeks. Meditab is not only asking for a determination that Pharmacy breached the Agreement by failing to make the April Payment; it also seeks a declaration that as a result of that breach, the Purchased Assets

have reverted back to Meditab and the Restrictive Covenants are now void. The question of whether Medtiab was the first to breach is indeed relevant, and must be resolved, before such relief can be issued. If Meditab was indeed the first to breach the Agreement, a triable issue remains as to whether it is entitled to have the assets returned to it. Similarly, an issue remains whether Pharmacy would be entitled to an offset[4] or some other form of equitable relief. Because Meditab's motion seeks what is effectively a full resolution of this case, the question as to whether it first breached the Agreement is material, and the court cannot grant it summary judgment, and essentially resolve this dispute in its favor, until that issue is resolved.

### III. A material question of fact exists as to whether the Note is still in effect.

As discussed in the First Order, "[b]ecause the Amendment neither forgives, nor incorporates the sums owed by, the Note, it is unclear, at this point in the litigation, whether the Note is still in effect," this "discrepancy is material," and "Meditab is not entitled to summary judgment while this issue remains unresolved." (*See* First Order, ECF No. 62 at 11). Meditab argues that this discrepancy is immaterial to the current allegations before the court, as it is seeking relief under Section 8.4 of the Agreement, not the Note. But Meditab's argument overlooks, or at least minimizes, its request for relief. Meditab is not only asking for partial summary judgment on the narrow issue of whether Pharmacy's failure to make the April Payment constituted a breach of the Agreement; it wants an adjudication that as a result of that breach, it is, in effect, entitled to set aside the Agreement and regain control of the Purchased

---

[4] Meditab argues that it is only seeking partial summary judgment, and that any such offset could be resolved later in this litigation. While the court acknowledges that, in a vacuum, this is indeed a possible avenue that could be taken, it does not find that such an approach is appropriate in this case. There are simply too many unanswered, and material, questions that must be resolved before the court can determine that Medtiab is indeed entitled to have the Purchased Assets returned to it. Moreover, Pharmacy's claim that it has had to substantially modify and correct errors in the software that was an important part of the Purchased Assets in order to use the same indicates to the court that a determination may need to be made as to what the "Purchased Assets" actually are. This additional level of ambiguity supports the below-discussed conclusion that this matter is simply more complicated than Medtiab wishes to acknowledge and cannot be resolved through litigation shortcuts.

Assets.  The court cannot grant such relief while it is still unclear what exactly the parties have agreed to and, specifically, whether the terms of the Note are still in effect.

### IV.  The court lacks the authority to order the alternative relief Meditab seeks.

Meditab requests the court, if it denies its Second Motion, to grant it the alternative relief of ordering Pharmacy to pay all sums due under the Agreement, but no less than $1,550,000, into escrow with the court.  The court does not have authority to do so.  Meditab argues that the court has discretion to order such action, asserting that the court has "already recognized its authority to compel Pharmacy to make payments into escrow" through its October 5, 2020 Order Granting in Part Pharmacy's Motion for Extension of Time to Respond to the Second Motion (ECF No. 69).  (*See* ECF No. 73 at 19–20).  Meditab's argument is disingenuous and patently incorrect.  In that order, the court gave Pharmacy the *option* of either responding by November 2, 2020, or, in the alternative, posting a bond and having until December 16, 2020 to respond.  (*See* ECF No. 69).  That order in no way compelled, nor suggested that the court had the authority to compel, such a payment into escrow.  Indeed, the court is not aware of any authority it has, be it explicit or discretionary, to order such action in this situation.  As such, Meditab's request for alternative relief is **DENIED**.

## CONCLUSION

As discussed herein, the same genuine issues of material fact that existed when Meditab filed its First Motion remain unresolved and are material to its Second Motion.  The presence of such unresolved questions prohibits the court from granting Meditab the partial summary judgment it seeks. Further, the court lacks the authority to grant Meditab the alternative relief it requests.  Simply put, the underlying transaction between the parties is complicated and has been made even more convoluted through the parties' post-signing interactions.  Thus, and despite Meditab's repeated efforts to find a shortcut in this matter, the court finds (for the *third* time) that

this case should proceed to discovery "over the normal course of time." (*See* ECF No. 27 at 24:1–5; ECF No. 47 at 2; First Order, ECF No. 62 at 12).

DATED this 12th day of February, 2021.

BY THE COURT:

_____

Clark Waddoups
United States District Judge